# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| JACQUELINE BROWN | CIVIL ACTION |
|---|---|
| VERSUS | NO. 07-2665 |
| STATE FARM FIRE AND CASUALTY COMPANY | SECTION "K"(2) |

## ORDER AND OPINION

Before the Court is the "Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claims" filed on behalf of defendant State Farm Fire and Casualty Company (Doc. 60). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion in part and denies the motion in part.

## BACKGROUND

Jacqueline Brown owns a home located on Eastover Drive in New Orleans, Louisiana. The house sustained significant damage as a result of Hurricane Katrina. At the time of Hurricane Katrina, State Farm entities provided the flood insurance and the homeowners insurance on the Brown home.

On August 31, 2005, Mrs. Brown notified State Farm that her property sustained damage as a result of the hurricane. On September 4, 2005, State Farm issued a $2,500.00 advance under the flood insurance policy. During a telephone call on October 7, 2005, State Farm Adjuster Kenneth Hughes advised Mrs. Brown that he had determined that the policy limits under the flood policy should be paid. At that time Mrs. Brown reported to Mr. Hughes that in addition to flood damage, the property had sustained wind damage. By mid-October, 2005, State Farm paid the

Browns the dwelling and contents limits under the flood policy.

On October 17, 2005 State Farm adjuster Ronald Horst contacted Mrs. Brown to set up an inspection of her property to assess wind damage; the inspection occurred seven days later on October 24, 2005. The State Farm "Activity Log" indicates that the roof needed to be replaced and that there was "[d]amage to some gutters, broken windows, Interior damage ceilings damaged." Doc. 66-3. On November 17, 2005 State Farm issued a check for $57,830.52 for wind damage under Coverage A of the homeowner's policy. After issuing that check, State Farm closed the claim under the homeowner's policy.

On December 12, 2005 Jacqueline Brown wrote to Ronald Horst requesting additional payments under the homeowner's policy. State Farm reopened the claim, and on December 28, 2005 Ronald Horst reinspected the property. Less than a week later State Farm issued an additional payment of $67,150.23,[1] representing 100% of the additional amount requested by Jacqueline Brown.

It is undisputed that there was no further contact between Jacqueline Brown and State Farm until Mrs. Brown filed suit against State Farm Fire and Casualty Insurance Company on August 29, 2006 seeking additional damages under the homeowner's policy as well as statutory penalties, interest and attorney's fees pursuant to La. Rev. Stat. 22:658[2] for State Farm's arbitrary and capricious failure to timely pay the amounts due to plaintiff under her homeowner's policy and for

---

[1] The additional payment included amounts under Coverage A (dwelling), Coverage B (contents), and Coverage C (additional living expenses).

[2] Pursuant to Act 2008, No. 415, §1, effective January 1, 2009, La. Rev. Stat. 22:658 was renumbered La. Rev. Stat. 22:1892. For ease of reference, the provision will be referred to as La. Rev. Stat. 22:658.

damages and statutory penalties pursuant to La. Rev. Stat. 22:1220[3] for State Farm's breach of the duty of good faith and fair dealing.

State Farm filed this motion for partial summary judgment on plaintiff's claims for bad faith penalties or attorney's fees under §658 and §1220 contending that plaintiff has not offered any evidence establishing that State Farm adjusted her claims in a manner that was arbitrary, capricious, or without probable cause. State Farm also urges that penalties are precluded because plaintiff breached her post-loss contractual obligations under her policy.

### SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *cert. denied*, 506 U.S. 832 (1992), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Mere allegations or denials are not sufficient to defeat a well-supported motion for summary judgment. Fed.R.Civ.P. 56(e). The nonmoving party must come forward with "specific facts

---

[3] Pursuant to Act 2008, No. 415, §1, effective January 1, 2009, La. Rev. Stat. 22:1220 was renumbered La. Rev. Stat. 22:1973. For ease of reference, the provision will be referred to as La. Rev. Stat. 22:1220.

showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

LAW AND ANALYSIS

Louisiana Rev. Stat. 22:658 provides that an insured is entitled to statutory penalties if an insurer fails to pay a claim within thirty (30) days of the insured providing satisfactory proof of loss *and* the insurer's failure to timely pay is arbitrary, capricious, or without probable cause. La. Rev. Stat. 22:1220 penalizes similar behavior. It permits an insured to recover consequential damages that result from an insurer's failure to pay a claim within sixty (60) days of receiving satisfactory proof of loss, if the delay in payment is "arbitrary, capricious, and without probable cause." La. Rev. Stat. 22:1220.

To recover under either statute, the plaintiff must demonstrate that the insurer (1) received a satisfactory proof of loss; (2) that the insurer failed to pay within the designated time period, and (3) that the failure to pay was arbitrary, capricious or without probable cause. *Boudreaux v. State Farm Mutual Automobile Insurance Company*, 896 So.2d 230, 233 (La. App. 4th Cir. 2005). "Satisfactory proof of loss . . . is that which is sufficient to *fully* apprise the insurer of the insured's claim." *Block v. St. Paul Fire & Marine Ins. Co.,* 742 So.2d 746, 752 (La. App. 2nd Cir. 1999) citing *McDill v. Utica Mutual Ins. Co.*, 475 So.2d 1085, 1089 (La. 1985).

4

> The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.
>
> Both R.S. 22:658 and R.S. 22:1220 require proof that the insurer was "arbitrary, capricious, or without probable cause," a phrase that is synonymous with "vexatious." This court has noted that "vexatious refusal to pay" means unjustified, without reasonable or probable cause or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense.

*Sher v. Lafayette Insurance Company*, 988 So.2d 186, 206 (La. 2008) citing *Reed v. State Farm Mutual Automobile Insurance Company*, 857 So.2d 1012, 1020-21 (La. 2003).

Because both §658 and §1220 are penal in nature, they must be strictly construed. *Hart v. Allstate*, 437 So.2d 823, 827 (La. 1983). Therefore, "the insured must 'clearly show [ ] that the insurer was arbitrary, capricious, and without probable cause in refusing to pay.'" *Hartenstein v. State Farm Fire and Casualty Insurance Co.,* 2008 WL 2397713, *3 (E.D. La. June 10, 2008) quoting *Block v. St. Paul Fire & Marine Insurance Co.*, 742 So.2d at 751.

A. Penalties Under §658

To the extent that plaintiff contends that State Farms is subject to penalties under §658 for the "late" payment of the amounts paid to plaintiff on November 17, 2005 and January 2, 2006, the Court concludes that State Farm is entitled to summary judgment. Although State Farm's November 17, 2005 payment came forty-six (46) days after plaintiff reported to a State Farm representative that her home sustained wind damage as well as flood damage, plaintiff has not provided any evidence establishing that she provided State Farm with satisfactory proof of loss of the wind claim, i.e., notice sufficient to fully apprise the insurer of the claim, more than thirty (30) days before State

Farm made the November 17, 2005 payment. Moreover, with respect to the November 17, 2005 payment plaintiff has offered no evidence creating a genuine issue of material fact concerning whether State Farm acted arbitrarily, capriciously, or without probable cause, in failing to make its first payment on the wind damage claim until November 17. State Farm's tendered of the November 17, 2005 payment within thirty (30) days of Ronald Horst's October 24, 2005 inspection of the Brown home for wind damage demonstrates an absence of vexatious conduct, and plaintiff has submitted no evidence which suggests any arbitrary and capricious failure to pay on defendant's part.

Additionally, State Farm is entitled to summary judgment on plaintiff's claim for penalties under §658 with respect to the January 2, 2006 payment. On December 12, 2005, approximately one month after State Farm made its first payment to plaintiff, Mrs. Brown sent Ronald Horst an itemized list of damaged property, mileage and additional living expenses and requested payment for those items. Doc. 68-28, Plaintiff's Exhibit 16. By plaintiff's own admission the additional items for which payment was requested had been "omitted from our previous list." *Id.* Well within thirty (30) days of receipt of Mrs. Brown's request for additional payment, State Farm reopened its file, reinspected the damaged home, and issued payment for an additional $67,150.23, which included payment for all items requested by Mrs. Brown in her December 12, 2005 letter. Because State Farm paid the supplemental claim within thirty (30) days of receiving notice and proof of those losses, plaintiff is not entitled to penalties under §658 with respect to that payment.

Plaintiff also seeks penalties under §658 for State Farm's arbitrary and capricious failure to timely pay additional the amounts included in proofs of loss provided to State Farm on August 12, 2008 for contents damage, September 25, 2009 for additional living expenses, and December 9,

2009 for structure damage. In support of her claim plaintiff submitted documentation from John Crawford opining that high winds deformed the windows of the Brown home allowing rainwater into the home resulting in damage to the interior of the home. Doc. 68-20, Plaintiff's Exhibit 6-1. Mrs. Brown has also supported her claim with an estimate by Ray Gonzales of Louisiana Loss Consultants estimating the cost to repair the wind damage to the Brown home to be significantly higher than the State Farm estimate. Doc. 68-22, Plaintiff's Exhibit 7-1. Mr. Gonzales opined that rainwater entered the Brown home through windows deformed by high winds and the damaged roof resulting in damage to the interior of the home . Mr. Gonzales stated in pertinent part:

> Regarding the interior, drywall ceilings were damaged by water intrusion thus damaging insulation, lighting and electrical. State farm [sic] agreed that water had damaged ceilings on the first floor. If water got to the first floor ceilings, it must have traveled through the 2nd story flooring. There is electrical and insulation between the floor that would have gotten wet. . . . Lighting was replaced in some areas due to threat of fire hazard after being wet.
>
> Regarding the exterior, the asphalt roofing system was compromised by high winds. A number of shingles were blown off, as well as a chimney cap. This allowed water to penetrate the risk damaging ceilings, wall, and flooring on both floors.
>
> Our office took into account the flooding and did not include any items that were directly damaged by flood. This is a wind damage only estimate.

Doc. 68-22, Plaintiff's Exhibit 7-1. Additionally, Mrs. Brown has testified that following Hurricane Katrina her home was uninhabitable due to wind damage. Doc. 60-5, p. 390, State Farm Exhibit 3.[4]

State Farm on the other hand has submitted a report by Don Barnes concluding in pertinent part:

---

[4] That testimony conflicts with that of her husband who testified that flooding caused the house to be uninhabitable. Doc. 60-6, page 216, State Farm Exhibit No. 4.

> the flooding from the storm surge is responsible for almost all damage to the Brown residence. It is obviously this flooding that made the home uninhabitable, while damage from the wind and rain alone would not have. In the absence of flood, all rooms would have been readily usable as soon as civil authorities permitted residents to return.
>
> . . .
>
> Since the ceiling damage was minimal and localized, it is my opinion that damage to walls, floor coverings, and personal property did not result from rain water intrusion.
>
> . . .
>
> The Louisiana Loss Consultants, L.L.C. scope of work for repairing wind damage is incorrect. This estimate includes numerous work items that were not related to winds. The scope of work "Summary for Wind Damage" prepared by the State Farm Insurance Companies appears correct. It accurately itemizes the damage and repairs (omitting possible window area gypsum board repairs) that were necessary solely due to wind damage.

Doc. 60-8, State Farm Exhibit No. 6.

The cited evidence establishes a genuine issue of material fact concerning the extent of the damage to the home resulting from wind damage. That coupled with Mr. Barnes opinion that State Farm's "Summary of Wind Damage" omitted possible window area gypsum board repairs is sufficient, although just barely, to preclude granting summary judgment on plaintiff's remaining claims for penalties under §658. The Court notes however that State Farm may wish to urge a Rule 50 motion on this issue at the appropriate time.

B. Penalties Under §1220

Because State Farm tendered the November 16, 2005 payment within sixty (60) days of plaintiff reporting her wind damage claim to State Farm, there was no "late" payment of that claim. Therefore, the Court grants State Farm's motion for summary judgment with respect to any claim

for penalties under §1220 for the late payment of that claim. For the same reasons stated above with respect to any §658 penalties with respect to the January 2, 2006 payment, State Farm's motion is granted with respect to plaintiff's claim for penalties under §1220 for the "late" payment of that claim.

For the reasons stated above, the Court denies State Farm's motion for summary judgment with respect to §1220 penalties for plaintiff's claim with respect to the losses submitted on August 12, 2008, September 25, 2009, and December 9, 2009.

The arbitrary and capricious failure to timely pay a claim is not the sole basis for an award of penalties under §1220. The statute also provides for penalties for knowingly "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverage at issue." La. Rev. Stat. 22:1220B(1). Plaintiff contends that during the inspection of her home State Farm adjuster Ronald Horst misrepresented various provisions of her policy. Specifically, Mrs. Brown testified that Mr. Horst told her that "the content was on– our content was covered on the flood and we did collect our [policy limit] already[5] and that she believed that she was precluded from claiming any additional loss of personal property because of Mr. Horst's representations.[6] Mrs. Brown also testified that Mr. Horst told her that she "could go ahead and throw away the stuff that was damaged." [7] State Farm contends that plaintiff violated her post-lost contractual duties, in part by throwing away her damaged contents thereby precluding future inspections of that property by State Farm. The cited testimony raises a genuine issue of material fact concerning whether plaintiff is entitled to penalties

---

[5] Doc. 68-24, Plaintiff's Exhibit 9, p. 444.

[6] Doc. 68-24, Plaintiff's Exhibit 9, p. 445.

[7] Doc. 68-24, Plaintiff's Exhibit 9, p. 444.

9

under §1220B(2), thereby precluding summary judgment on that claim. Accordingly,

**IT IS ORDERED** that the motion for summary judgment is granted with respect to plaintiff's claim for penalties pursuant to 22 La. Rev. Stat. 658 and 22 La. Rev. Stat. 1220 with respect to any claims related to the November 17, 2005 payment by State Farm,

**IT IS FURTHER ORDERED** that the motion for summary judgment is granted with respect to plaintiff's claim for penalties pursuant to 22 La. Rev. Stat. 658 and La. Rev. Stat. 1220 with respect to any claims related to the January 2, 2006 payment by State Farm;

**IT IS FURTHER ORDERED** that the motion for summary judgment is denied in all other respects.

New Orleans, Louisiana, this 9th day of March, 2010.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE